S. Samuel Di Falco, S.
The litigation in the pending proceeding emphasizes the wisdom of the rule which insists, insofar as is possible to do so, that a fiduciary shall not act in a situation where his personal interests and the trust interests are in conflict. The testator is free, of course, to make that rule inapplicable to the administration of his estate. This testator appointed two executors to carry out the provisions of his will. He was indebted to Samuel C. Cutler, one of the executors. The amount of the debt has been fixed in the sum of $143,469.84 (31 Mise 2d 193), and the court has directed that it be paid as soon as the executors are in possession of sufficient cash. The principal assets of the estate are shares of stock of two estate-owned corporations, one which is engaged in the retail liquor business and the other in real estate operations. The two corporations, the testator and Samuel Cutler had entered into an agreement whereby Cutler was to render certain management and accounting services to the corporations and was to be paid 50% of the annual net earnings of one corporation and 33%% of the annual net earnings of the other corporation. The decedent guaranteed the performance of the contract and the payments. This agreement is by its terms to continue in force “ for three full calendar years after all indebtedness now due or which may become due shall have been paid ” to Samuel Cutler. The corporations have been successfully operated and produce a substantial return to the estate and to Samuel Cutler. Under the terms of the contracts, he is to continue to receive these large shares of the profits of the two corporations until the lapse of three years after the payment of $143,469.84.
The adult members of the testator’s family and the other executor, Dr. Bender, believe that the best interests of the estate require payment of the claim of Mr. Cutler as soon as possible so that a termination date for the contract can be fixed. To make that payment it is necessary for the estate to raise cash in the full amount of the debt. Mr. Cutler originally appeared to be of the view that a liquidation of his claim over a 10- or 15-year period would be in the best interests of the estate. He *895 is now agreeable to having the loan paid immediately, but he and his coexecntor are in disagreement with respect to the manner of raising cash to pay the claim.
The petitioners in this proceeding are the widow and the two children of the decedent. All are income beneficiaries of the trust which consists of virtually the entire estate, and the children are also contingent remaindermen of that trust. Under the terms of the will, the trustees are to pay testator’s former wife a stated annual sum out of income, or if that be insufficient, then out of income and principal. One third of the remaining income is to be paid to the testator’s widow, 3/15 to the testator’s son, 2/15 to the testator’s daughter, and 1/15 each to five grandchildren. Thus the petitioners take in the aggregate two thirds of the income of the trust after payment of the fixed sum to the former wife. In this proceeding, they originally asked the court to give directions respecting the liquidation of estate assets and the payment of liabilities, and, particularly, with respect to the sale of the wine and liquor corporation and an increase of the mortgage on the property of the realty corporation to the extent found to be necessary. Other relief is requested, but inasmuch as there is no pressing necessity for an immediate decision on these matters, the court will reserve decision on them until a later date. The offer by a savings bank to increase the present mortgage is very limited in time and requires an immediate decision on that phase of the executorial disagreements.
The present proceeding was instituted in December 1961. Coexecutor Bender joined in the application of the petitioners. Coexecutor Cutler strongly opposed the sale of the business and other relief that is requested. The proceeding then took a rather curious turn. After the filing of the petition, the parties nevertheless continued discussion in an effort to work out a satisfactory solution. The savings bank which held the existing mortgage on real property owned by the realty corporation made a definitive commitment to increase that mortgage to $375,000. The executors were and still remain in disagreement on the acceptance of this proposal. The petitioners then moved to amend the original petition to request a judicial direction to the executors to accept this proposal for an increase of the mortgage and to withdraw the prior request for sale of the business if the mortgage be so increased. Prior to the filing of the amending petition, but while this proposal was before the parties, coexecutor Cutler advised the court by letter that he was withdrawing his objection to the sale of the business. Therefore, by the time that the second petition was filed, all *896 parties had reversed positions. Coexecutor Bender, together with the widow and children, favor the increase of the mortgage rather than sale of the business. Coexecutor Cutler recommends sale of the business but is opposed to the proposed increase of the mortgage, suggesting an increase to only $325,000.
In view of the very sharp disagreement between the two executors on almost every step in the estate administration and in view of the danger to the estate caused by the resulting impasse, this court will entertain the request for advice and directions. (Matter of Bourne, 11 A D 2d 128.)
The court is of the view .that the course of the administration of this estate will proceed more effectively and expeditiously if the personal claim of the coexecutor is paid in full. All parties now appear to be in agreement that the personal claim should be paid as soon as it is possible to make such payment. In order to pay this claim, the estate must obtain cash. The proposal which is advanced by the adult income beneficiaries and the one executor is strongly opposed by the other executor. In view of this conflict between the executors, and in conformity with what the court believes to be the rule laid down in Matter of Bourne (9 A D 2d 647), the court set the matter down for hearing on all the questions relating to the proposed mortgage. Necessarily, any determination on the proposal to extend the mortgage requires determination on the counter-proposal. Both executors have submitted letters, memoranda, and charts designed to show the financial advantage to the estate in pursuing the course which each advocates. Many of the figures must necessarily be based upon estimates or upon the judgment of the particular person under the facts as he believes they will develop. As might be expected, the figures conflict very greatly.
It seems to the court that the mortgage proposal of the petitioners will not raise sufficient cash to enable the executors to pay the personal claim, current administration expenses and tax obligations and will not permit the setting up of the trusts within a reasonable time. The executors, of course, disagree on the estimates of expenses and tax obligations. They disagree even as to when the .taxes must be paid and whether time for payment has been extended or can be extended. The court cannot possibly determine here and now all the points of difference between them and will not attempt to predict the future course of events. Certainly some administration expenses will be payable in the very near future. The relatively small amount of cash that would remain after payment of the personal claim will not be sufficient to enable the estate administration to be closed for a period of years. Ultimately the retail store must *897 be sold. It is true that if the store were held until the Cutler contract expired, it could be sold without subjecting the proceeds to his claim for damages. However, that course of action would prolong the administration for more than three years; it would require the holding of a speculative asset for at least that period of time; it would delay the setting up of the trusts; it would undoubtedly cause continued disagreement and continuous litigation in respect of the disposition of the income, the source of payment of obligations and expenses, and the respective rights and interests of all the beneficiaries. No one can safely say that the value of the store will not be decreased during the next three years. Conceivably a business such as this could lose its entire value over that period.
The court believes that sufficient cash should be raised to pay all debts, expenses and taxes, and to permit the terms of the will to be carried out. The interest of all parties will be promoted if the administration proceeds expeditiously and efficiently. The court believes that the sale of the store and the increase of the mortgage in the smallest amount possible, will best promote the estate administration.
The request of the petitioners for a direction that the executors proceed to increase the mortgage to $375,000 is, therefore, denied. It seems to be agreed that an increase to $325,000 will be sufficient if the store be sold. The court will direct only the latter increase. A specific proposal to purchase the store is in the hands of the executors. It appears to be agreed that if the store is to be sold, this offer should be accepted. If all parties are agreed that a better offer is not obtainable, the court will approve the sale referred to in the course of the hearing. If any party takes the position that a more advantageous sale of the business can be effected, the court will grant an immediate hearing on that issue.